(No. 18653.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* PEGGY COLLINS, Plaintiff in Error.

*Opinion filed October 25, 1928.*

JOHN D. FARRELL, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and R. C. BROWN, (EDWARD E. WILSON, and JOHN HOLMAN, of counsel,) for the People.

Mr. CHIEF JUSTICE DEYOUNG delivered the opinion of the court:

Peggy Collins was indicted in the criminal court of Cook county for stealing three rings valued at $800 each and one coat of the value of $700, all belonging to Marie Cagney. The defendant was found guilty by a jury. Motions for a new trial and in arrest of judgment were overruled and she was sentenced to the penitentiary. This writ of error followed.

The evidence offered by the prosecution shows the following facts: Marie Cagney, who resided in the first apartment of 5060 West Congress street, Chicago, inserted an advertisement in the *Chicago Tribune* for a maid to do

housework. In the forenoon of March 8, 1926, a girl, who gave her name as Marjorie Mason and also as Peggy Collins, called in answer to the advertisement. After a brief conversation the girl, pending the investigation of her references, was put to work for the day. Shortly after noon Mrs. Cagney asked her to assist in taking the baby in its carriage down the front steps outside of the building. When part of the way down the girl asked to be excused that she might go to the bath-room. Mrs. Cagney took the carriage, with her infant child in it, down the steps and placed it in front of her apartment. She returned to her front door and found it locked. She knocked on the door and called the girl but received no response. Mrs. Cagney then went up-stairs, where Frances Bonn, her sister, lived, passed through this apartment to the rear, descended the stairway to the first floor and found the rear door of her apartment wide open. She called the girl but failed to find her. Mrs. Cagney had placed her diamond rings in a dresser drawer earlier in the day. She immediately looked for them and for her fur coat but found they were missing. She called the police, but the girl could not be found and the stolen articles were never recovered. Frances Bonn, Mrs. Cagney's sister, went down to the latter's apartment twice during the forenoon of March 8, 1926. She saw the new maid at work and observed that she had large eyes and high cheek bones. Nearly a year later, on March 5, 1927, the plaintiff in error was arrested while employed as a check-room girl at the Hotel Sherman, Chicago. Both Mrs. Cagney and Mrs. Bonn identified her as the girl the former had employed on March 8, 1926.

It was disclosed on the cross-examination of Helen Bowden, the police officer who made the arrest, that she found a diary at the home of the plaintiff in error; that under the date of March 8, 1926, the officer found a reference to one Mrs. Davis; that she called Rose Davis, 924 Winona avenue, Chicago, on the telephone and inquired

whether she had ever employed a girl named Peggy Collins; that Mrs. Davis replied that she had but that she could not tell when without reference to her advertisement in the *Tribune,* and that she did not remember whether the girl came in the forenoon or afternoon. Upon the cross-examination of Joseph C. Simmons, a detective from Michigan City, Indiana, it was shown that he had arrested the plaintiff in error for stealing a fur coat at a dancing pavilion and that she wore the coat at the time of her arrest.

The plaintiff in error testified that on Sunday, March 7, 1926, she saw an advertisement in the *Chicago Tribune* by Rose Davis, of 924 Winona avenue, Chicago, for a maid to do housework; that she called Mrs. Davis on the telephone and was told to come the next morning; that she arrived at the home of Mrs. Davis between 9:00 and 9:30 A. M. on Monday and was employed at $10 per week. She denied that she ever answered an advertisement to work at 5060 West Congress street or appeared at that number or took the rings and coat belonging to Mrs. Cagney. She further testified that when Mrs. Cagney pointed her out at the police station as the person who stole the rings and coat she denied that she was guilty of the charge; that she never went under any name other than Peggy Collins, except the name of Marjorie Mason, which a Mrs. Downey, of Kingsbury, Indiana, to whom she had been paroled, gave her. She denied that she had stolen a coat at Michigan City but stated that she took one by mistake and at the time of her arrest on that charge was making an effort to return it. It was agreed and made to appear of record that the age of the plaintiff in error at the time of the trial was eighteen years.

Rose Davis testified that she placed an advertisement in the *Chicago Tribune* of March 7, 1926, for a girl to do general housework; that pursuant to this advertisement the plaintiff in error called her on the telephone and was employed on the next day at $10 per week; that the witness

did not remember the hour the plaintiff in error came; that she worked two days, when the witness decided that she was too young to do the work and sent her to a sister who had a smaller family, and that she remained there about two months. Florence Bass, the sister of Rose Davis, testified that the plaintiff in error worked for her two or two and one-half months from March 10, 1926, and that she was honest while she was so employed. Alice Meyer, an aunt of the plaintiff in error, testified that the latter lived with her at 4621 Lake Park avenue, Chicago, on March 7, 1926; that on the next day the plaintiff in error left the house at 8:00 A. M., and that the witness talked with her over the telephone three times that day.

The first contention of the plaintiff in error is that references to her aliases at the trial were prejudicial to her. To Mrs. Cagney she gave her name as Marjorie Mason and also as Peggy Collins. When Frances Bonn pointed her out as the person she saw at work in Mrs. Cagney's apartment the assistant State's attorney observed, "indicating for the purpose of the record the defendant Peggy Collins, alias Margie Mason, alias Peggy Davis." No objection was made to this statement. The first reference to the name Anderson was made by her counsel on the cross-examination of police officer Bowden. On the re-direct examination of the same officer the assistant State's attorney asked her whether she could from memory tell how many aliases the plaintiff in error had. The witness answered that she thought she could, and gave the names of Margie Mason, Peggy Collins, Margie Anderson, Peggy Andrewshock and Clara Hudson. There was neither an objection to this question nor a motion to strike out the answer. On cross-examination counsel for the plaintiff in error asked the witness where she obtained the information that the plaintiff in error was known by these names, and she answered from police departments and sheriffs, through investigations she had made in northern Indiana and southern Michigan. A

motion was then made to strike out the testimony of the witness concerning the aliases of the plaintiff in error, but the motion was denied. Joseph C. Simmons, the detective from Michigan City, Indiana, was asked by the assistant State's attorney on direct examination whether he knew Peggy Collins, alias Margie Mason, alias Peggy Davis, and he answered that he had been acquainted with her about three years. He was further asked by what other names she was known, and he answered, Margaret Andershock, Margaret Anderson, Margie Collins, Clara Hudson, Margaret Mason and Margaret Andrews. No objection was made to the question nor was there a motion to strike the answer. On cross-examination counsel for the plaintiff in error elicited from the witness that the plaintiff in error often used these names but that he did not know her by the name of Peggy Davis; that she was once paroled and that he had arrested her for stealing a coat. In view of the facts adduced, not by the prosecution but by counsel for the plaintiff in error upon cross-examination, it is not apparent how references to the several names by which the plaintiff in error was known could have been prejudicial. Moreover, in the absence of objections in the trial court to the questions asked by the assistant State's attorney the competency of the answers is not saved for review.

Complaint is made of certain instructions given to the jury at the prosecution's request. The second instruction, after informing the jury that the indictment was merely a charge and did not tend to prove the defendant guilty and that the jury should not be prejudiced thereby, continued: "A defendant is presumed to be innocent of the charge throughout the entire trial until the State proved him guilty beyond a reasonable doubt, and during your consideration of your verdict you should consider this presumption of innocence. A verdict of guilty cannot be based upon mere probability, presumption, speculation or suspicion. The burden is upon the State to prove beyond a reasonable

doubt and to a moral certainty that the defendant is guilty of the charge in manner and form as contained in the indictment." The objection is that the phrase "until the State proved him guilty beyond a reasonable doubt" might lead the jury to infer that the presumption of innocence continued only until the State had concluded its presentation of the evidence and that the plaintiff in error was obliged to establish her innocence. This instruction expressly stated that the presumption of innocence continued throughout the trial and should be considered by the jury during their deliberations upon the verdict, and that it was incumbent upon the prosecution to prove the defendant's guilt of the charge in the indictment beyond a reasonable doubt. The instruction was not misleading, as contended.

The third instruction, which related to the presumption of innocence and the burden of establishing the defendant's guilt beyond a reasonable doubt, contained the sentence, "a reasonable doubt means in law a substantial and well-founded doubt, and not the mere possibility of a doubt." The criticism made upon this instruction is that the law gives the defendant the right to an acquittal if there is a reasonable doubt of his guilt, and that the added requirement of a well-founded doubt is unjustified. If a reasonable doubt actually exists it is sufficient, whether well or ill-founded. (*People* v. *Krauser,* 315 Ill. 485.) The additional requirement has no basis. It serves only to confuse the jury and should have been omitted. The concluding paragraph of the instruction, however, made it clear that a reasonable doubt of the guilt of plaintiff in error would entitle her to an acquittal, and the jury could not have been misled by the instruction.

The fourth instruction concerned the right of the defendant to testify in her own behalf, and concluded with the statement that "the jury may also take into consideration the fact, if such is the fact, that she has been corroborated or contradicted by credible evidence, or by facts and

circumstances in evidence." The objection to this instruction is that there were no circumstances in evidence for the jury to consider. The contention has no merit and need not be considered.

It is contended that the verdict is insufficient to support the judgment because, it is argued, the jury did not find the value of the property stolen or the age of the plaintiff in error. The jury by the verdict fixed the value of the property stolen to be over $15. While the value was not definitely fixed, yet it was in excess of $15, and therefore sufficient to sustain a judgment and sentence of imprisonment in the penitentiary. (*People* v. *Shupe*, 306 Ill. 31.) Concerning the age of the plaintiff in error, it may be observed that it was agreed upon, that it appeared affirmatively of record, and that her age was such that if found guilty she could be sentenced to the penitentiary. Under these circumstances the failure of the jury to find the age of the plaintiff in error was not prejudicial. *People* v. *Rogers*, 303 Ill. 578.

Finally, it is contended that the evidence does not sustain the verdict. The weight of the evidence is for the jury to determine, and this court will not disturb a verdict of guilty or reverse a judgment of conviction on the ground that the evidence is insufficient to convict unless the verdict is palpably contrary to the weight of the evidence or the evidence is so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. (*People* v. *Holton*, 326 Ill. 481; *People* v. *Hicketts*, 324 id. 170; *People* v. *Thompson*, 321 id. 594; *People* v. *Jarecki*, 291 id. 80.) The evidence justified the jury in returning a verdict of guilty.

The judgment of the criminal court of Cook county is affirmed.

*Judgment affirmed.*